******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* JAMAR BOYD
## (AC 43082)

Lavine, Prescott and Cradle, Js.*

*Syllabus*

The defendant, who had been previously convicted, on a plea of guilty, of assault in the first degree, appealed to this court from the judgment of the trial court denying in part and dismissing in part his motion to correct an illegal sentence. The defendant claimed that the trial court improperly denied that portion of his motion in which he alleged that the sentencing court had imposed his sentence in an illegal manner by relying on inaccurate information. *Held* that the defendant could not prevail on his claim asserted as a matter of law as the motion failed to advance a colorable claim that invoked the jurisdiction of the court; rather than truly attacking the legality of the sentencing proceedings or the sentence itself, the defendant instead challenged the continued validity of his choice to plead to reduced charges under the doctrine enunciated in *North Carolina* v. *Alford* (400 U.S. 25), and, in order for the court to have granted the defendant the relief he requested in his motion, it would have been required to open the judgment of conviction and vacate the plea agreement that was the actual basis of the challenged sentence, and, because the court lacked any authority to do so as part of the limited jurisdiction afforded under a motion to correct an illegal sentence, the motion, correctly construed, was nothing more than a collateral attack on the plea underlying the defendant's conviction; accordingly, this court concluded that the claim was properly rejected by the trial court but that the form of the judgment was improper with respect to this portion of the defendant's motion, and the case was remanded with direction to render judgment dismissing that portion of the defendant's motion.

Argued November 10, 2020—officially released May 4, 2021

*Procedural History*

Substitute information charging the defendant with two counts each of the crimes of assault in the first degree and robbery in the first degree, and with one count each of the crimes of larceny in the second degree and carrying a pistol without a permit, brought to the Superior Court in the judicial district of New Haven, where the defendant was presented to the court, *Damiani, J.,* on a plea of guilty to one count of assault in the first degree; judgment of guilty in accordance with the plea; thereafter, the court, *Clifford, J.,* denied in part and dismissed in part the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Reversed in part; judgment directed.*

*Robert T. Rimmer*, assigned counsel, for the appellant (defendant).

*Ana L. McMonigle*, special deputy assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Sean McGuinness*, assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Jamar Boyd, appeals from the judgment of the trial court denying in part and dismissing in part his amended motion to correct an illegal sentence. Specifically, the defendant claims on appeal that the court improperly denied that portion of his motion in which he alleged that the sentencing court had imposed his sentence in an illegal manner by relying on inaccurate information.[1] We conclude that only the form of the judgment was improper with respect to this portion of the defendant's motion. Accordingly, we reverse the judgment in part and remand the case with direction to render a judgment dismissing this portion of the defendant's motion to correct an illegal sentence. We affirm the judgment of the court in all other respects.

The record reveals the following facts and procedural history. In 2005, following an armed robbery and shooting, the defendant was charged with assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (5), robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and (4), larceny in the second degree in violation of General Statutes (Rev. to 2005) § 53a-123, and carrying a pistol without a permit in violation of General Statutes § 29-35. The defendant initially entered pleas of not guilty to these charges. In two other files, the defendant faced additional charges of sexual assault in the second degree in violation of General Statutes (Rev. to 2005) § 53a-71 (a) (1) and a violation of probation. See General Statutes § 53a-32.

On February 24, 2006, three days prior to the start of jury selection in the armed robbery file, the defendant appeared before the court, *Damiani, J.*, in order to change his pleas and accept a long-standing plea agreement offered by the state that resolved all three of his pending files. At the start of the hearing, the defendant informed the court that he wanted it to appoint him new counsel. According to the defendant, he was not getting along with his public defender and was unhappy with how the public defender was handling the case. Among numerous complaints, he asserted that his attorney had failed to obtain a copy of a taped statement purportedly made by Thomas Lopes, a witness to the shooting. The court informed the defendant that no taped statement by Lopes existed. The prosecutor confirmed the court's observation on the record, indicating that the police had interviewed Lopes twice but that those interviews were not taped. After listening to the defendant's arguments, and ensuring there were no outstanding discovery issues, the court stated that the defendant had given it no valid reason to remove his attorney and that the defendant could either accept the state's plea deal, which the state had held open for months, or proceed to trial the following week. The public defender indicated that, given the defendant's

stated belief that his case had been mishandled and not adequately investigated, he would advise the defendant not to accept the plea agreement and to go to trial. The defendant rejected that advice.

Under the terms of the plea agreement, which were stated on the record by the court, the defendant agreed to plead guilty under the *Alford* doctrine[2] to one count of assault in the first degree in the armed robbery file and one count of risk of injury to a child under a separate docket number in exchange for a definite sentence of twenty years, five of which were mandatory, and no probation.[3] The state agreed that it would nolle the remaining charges. The agreement contained no provision giving the defendant the right to argue for less than the agreed upon twenty years of incarceration or otherwise giving the sentencing court discretion as to the sentence it imposed. After canvassing the defendant regarding both his understanding of the plea agreement and the voluntariness of his plea, the court accepted the defendant's plea and scheduled a sentencing hearing for April 28, 2006. At the sentencing hearing, the court, after hearing from the attorneys, a family member of the shooting victim, and the defendant, sentenced the defendant to the agreed upon effective sentence of twenty years of incarceration. Because the parties had agreed to a sentence with definite terms, the court effectively had no sentencing discretion other than to reject the entire plea agreement. The court did not discuss the factual basis for the defendant's plea when it imposed the sentence.

Sometime after sentencing, the defendant learned that Lopes, in fact, had given a taped statement, and the defendant obtained a transcript of that statement. The gravamen of Lopes' statement was that he saw the defendant take something from the victim, which led to an argument between the victim and the defendant. When the victim attempted to run away, the defendant chased after the victim, eventually shooting the victim in the chest. The taped statement sets forth facts that arguably differ in minor respects from the factual basis provided by the state during the court's plea canvass.

On December 13, 2017, the defendant filed a motion to correct an illegal sentence in which he argued that his sentence was illegal and/or imposed in an illegal manner. The defendant later amended his motion to claim in relevant part that his "sentence was imposed in an illegal manner because [he] was denied [his] right to be sentenced by a judge relying on accurate information and/or considerations solely within the record." Specifically, the defendant argued that portions of Lopes' taped statement reasonably could be construed as lessening his culpability, the court had accepted his plea with the erroneous belief that no taped statement existed, and, because the sentencing court presumably relied on this inaccurate information as stated on the

record at the plea hearing, the defendant was denied "his right to be sentenced by a judge relying on accurate information."[4]

At the hearing on the motion to correct an illegal sentence, the defendant argued with respect to this claim that he believed portions of Lopes' statement tended to prove that he never had the intent to seriously injure the victim,[5] and that he would have pleaded guilty only to a lesser crime and received a lesser sentence. He also argued that the state's failure to disclose the taped statement amounted to a *Brady* violation.[6]

The state took the position that this aspect of the defendant's motion to correct an illegal sentence should be dismissed for lack of subject matter jurisdiction because the defendant was seeking to attack the judgment of conviction, claiming "he has reduced culpability based on this alleged new favorable information . . . ." The state further argued that, even if the court determined that it had jurisdiction over the motion, it failed on its merits because "there is no evidence that [the sentencing court] relied in any substantial way on the prosecutor's particular recitation of the facts" and, regardless, the sentence imposed "was an agreed upon disposition that the defendant himself agreed to enter into."

With respect to the jurisdictional question, the court, *Clifford, J.*, concluded that it had jurisdiction because the defendant's motion was predicated on a claim that the sentencing court had relied on inaccurate information at the sentencing hearing. Regarding the merits, the court first explained that, to prevail on a motion to correct an illegal sentence on the basis of a sentencing court's alleged reliance on inaccurate information, the defendant, in addition to showing that some information provided to the court by the state or defense counsel was, in fact, inaccurate, had to show that the sentencing court explicitly referred to the inaccurate information, gave specific attention to it, and relied on it in reaching the imposed sentence.

In ruling against the defendant, the court first noted that the sentence the defendant received was not the result of "a wide open sentencing" but, rather, reflected the definite sentence agreed to by the state and the defendant in the plea agreement. The court also disagreed with the defendant's characterization of the import of the Lopes statement or that its discovery after the fact helped the defendant to establish that he was sentenced on the basis of any inaccurate information. The court stated: "First of all, [the sentencing court] hardly said anything when [it] imposed the sentence. [It] didn't give any specific attention to the state's facts at all. . . . [It] didn't talk about . . . a witness's potential statement, what the victim might have said, nothing. . . . I know that you plead[ed] to this under the *Alford* doctrine; that you agreed to this particular sentence.

So . . . I think you're attacking the whole fairness of the procedure. I really don't think you're attacking whether the sentence was imposed in an illegal manner or that it's inaccurate. I think you're trying to attack the underlying facts but they were not inaccurate facts that the [sentencing court] relied upon at all in the exhibits that you've shown me. So on that basis, I'm denying your motion." This appeal followed.

The sole claim raised by the defendant on appeal is that the court improperly denied that portion of his motion to correct an illegal sentence in which he asserted that the sentencing court had relied upon inaccurate information in imposing the agreed upon recommendation. In support of this claim, the defendant argues in his brief that "the newly discovered taped statement of [Lopes] demonstrated reckless conduct rather than intentional conduct . . . [and], therefore, that [the defendant] should not have received a twenty year sentence . . . ." (Citation omitted.) We conclude that the substance of the defendant's claim does not attack the manner in which the sentence was imposed but is, in fact, a collateral attack on his plea, which falls outside the postsentence jurisdiction of the court. Accordingly, we conclude that the claim was properly rejected by the court but that the form of the judgment rendered was incorrect.

"The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . Under the common law, a trial court's jurisdiction over a criminal case terminates once the defendant has begun serving his or her sentence. . . . An exception to this general principle exists, however, that permits a trial court to retain jurisdiction to correct an illegal sentence. . . . This exception is recognized in Practice Book § 43-22, which provides that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner.

"[A]n illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. By contrast . . . [s]entences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . . These definitions are not exhaustive, however, and the parameters of an invalid sentence will evolve

. . . as additional rights and procedures affecting sentencing are subsequently recognized under state and federal law.

"Thus, to invoke the jurisdiction of a trial court to correct an illegal sentence, a defendant must allege that his or her sentence is illegal, or has been illegally imposed, for one of the reasons recognized under our common law. . . . Determining whether a defendant has satisfied this jurisdictional threshold presents a question of law over which our review is plenary." (Citations omitted; internal quotation marks omitted.) *State* v. *Cruz*, 155 Conn. App. 644, 648–50, 110 A.3d 527 (2015).

In *State* v. *Casiano*, 122 Conn. App. 61, 68, 998 A.2d 792, cert. denied, 298 Conn. 931, 5 A.3d 491 (2010), this court held that the trial court did not have jurisdiction over a motion to correct an illegal sentence filed by the defendant because the defendant challenged the validity of his guilty plea on the ground that trial counsel had given erroneous advice prior to entry of the plea. This court explained: "In order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the [proceedings] leading to the conviction, must be the subject of the attack. . . . The defendant's claim does not attack the validity of the sentence. Instead, it pertains to . . . alleged flaws in the court's acceptance of the plea. As such, it does not fit within any of the four categories of claims recognized under Practice Book § 43-22." (Citation omitted; internal quotation marks omitted.) Id.; see also *State* v. *Monge*, 165 Conn. App. 36, 43–44, 138 A.3d 450 (relying on *Casiano* in holding that motion seeking to vacate pleas and to open judgments of conviction fell outside court's limited postsentencing jurisdiction), cert. denied, 321 Conn. 924, 138 A.3d 284 (2016).

In the present case, the motion to correct an illegal sentence nominally challenges the sentencing proceedings by asserting that the sentencing court had relied on inaccurate information at the time of sentencing. The court denied the defendant's motion to correct an illegal sentence, concluding that although the motion invoked the jurisdiction of the court because it facially challenged the manner in which his sentence was imposed, he failed to meet his burden of demonstrating that the court had relied on any inaccurate information in sentencing the defendant in accordance with the definite terms agreed to pursuant to the plea agreement. See *State* v. *Martin M.*, 143 Conn. App. 140, 145, 70 A.3d 135, cert. denied, 309 Conn. 919, 70 A.3d 41 (2013). Nevertheless, in ruling on the defendant's motion, the court also made the following observation, which appears to undermine its finding of jurisdiction: "I really don't think you're attacking whether the sentence was imposed in an illegal manner or that it's inaccurate."

"[F]or the trial court to have jurisdiction over a defen-

dant's motion to correct a sentence that was imposed in an illegal manner, the defendant must put forth a colorable claim that his sentence, in fact, was imposed in an illegal manner. A colorable claim is [a] claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law). . . . For jurisdictional purposes, to establish a colorable claim, a party must demonstrate that there is a possibility, rather than a certainty, that a factual basis necessary to establish jurisdiction exists . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Jason B.*, 176 Conn. App. 236, 244–45, 170 A.3d 139 (2017). "For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he might prevail." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Evans*, 329 Conn. 770, 784, 189 A.3d 1184 (2018), cert. denied,      U.S.     , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019).

Having thoroughly reviewed the record in this case, we conclude that, under the circumstances, the defendant could not prevail on the claim asserted as a matter of law and, therefore, the motion failed to advance a colorable claim that invoked the jurisdiction of the court. Rather than truly attacking the legality of the sentencing proceedings or the sentence itself, the defendant instead challenges the continued validity of his choice to plead to reduced charges under the *Alford* doctrine. By electing to accept the proffered plea deal, the defendant received the benefit of a definite twenty year sentence with no probation and avoided the real risk posed by going to trial on all charges, including those nolled by the state, and thus potentially facing a far more substantial sentence if found guilty of all charges, including potentially having to register as a sex offender if the state prevailed on the sexual assault charge.

Here, in order for the court to have granted the defendant the relief he requested in his motion—a term of incarceration of less than twenty years—the court would have been required to do more than simply grant a new sentencing hearing. Rather, because the sentence imposed was the result of a plea agreement in which the defendant agreed to accept a definite sentence of twenty years and the state agreed to nolle a substantial number of other charges, the only way the court could have granted the defendant any practical relief on his motion to correct an illegal sentence was by opening the judgment of conviction and vacating the plea agreement that was the actual basis of the challenged sentence. Because the court lacked any authority to do so as part of the limited jurisdiction afforded under a motion to correct an illegal sentence, the motion, correctly construed, is nothing more than a collateral attack on the plea underlying the defendant's conviction rather than

a true challenge to the legality of the sentence imposed or to the sentencing proceedings. As such, despite any perceived superficial facial validity, the motion failed to state a colorable claim that his sentence was imposed in an illegal manner, and the court should have dismissed, rather than denied, the defendant's motion.

The form of the judgment is improper, the judgment is reversed only with respect to the trial court's denial of that portion of the motion to correct an illegal sentence claiming that the sentence was imposed in an illegal manner due to the sentencing court's alleged reliance on inaccurate information, and the case is remanded with direction to render judgment dismissing that portion of the defendant's motion to correct an illegal sentence; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The defendant does not challenge on appeal the court's dismissal for lack of subject matter jurisdiction that portion of his motion arguing that the sentencing court had failed to account for his youth as a mitigating factor in light of our Supreme Court's decision in *State* v. *Williams-Bey*, 333 Conn. 468, 473–77, 215 A.3d 711 (2019). The defendant also does not challenge the court's denial of that portion of his motion arguing that the sentencing court violated his right to allocution, conceding that the transcript of the sentencing hearing demonstrates that the court both provided him with an opportunity to allocute and that he exercised his right of allocution by making a direct statement to the court on his own behalf.

[2] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[3] The sentence was comprised of a twenty year sentence of imprisonment for the assault charge, five years of which was a mandatory minimum, and a concurrent five year sentence on the risk of injury charge. With respect to the probation violation, the court agreed to resolve that file by vacating the remainder of the defendant's unserved period of probation at the sentencing hearing.

[4] The court initially appointed counsel for the defendant pursuant to *State* v. *Casiano*, 282 Conn. 614, 922 A.2d 1065 (2007). Prior to counsel making the requisite "sound basis" determination; see id., 627; the defendant elected to proceed as a self-represented party and the court granted counsel permission to withdraw. The defendant does not challenge the propriety of these procedures on appeal.

[5] The defendant's position, as he explained at the hearing on the motion to correct, was that Lopes had indicated in his statement that the victim and the defendant had engaged in an argument, and that it was during this fight that the firearm went off. The defendant explained further: "It wasn't my intent to run up to the victim to just shoot him, which I'm standing right now convicted under and there's also evidence within [Lopes' statement] that said [a third party] had something to do with the actual crime."

[6] See *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).