******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JEFFREY K. WARD
(SC 20427)

Robinson, C. J., and McDonald, D'Auria, Kahn,
Ecker and Keller, Js.

*Syllabus*

The defendant, who had been convicted, on a plea of guilty, of manslaughter
in the first degree and assault in the first degree, appealed from the
trial court's dismissal of his motion to correct a sentence that was
imposed in an illegal manner. The defendant had claimed in his motion
that he was incompetent at the time of sentencing and that the sentencing
court failed to order, sua sponte, a competency evaluation and hearing
before imposing sentence. The defendant submitted with his motion to
correct a police report, psychiatric evaluation and records from the
Department of Correction that had become available after he was sen-
tenced, all of which concerned his mental illness and psychiatric treat-
ment prior to sentencing. The trial court dismissed the defendant's
motion to correct for lack of subject matter jurisdiction, concluding
that the motion challenged his competency at the time he pleaded guilty
and, thus, constituted a collateral attack on his conviction. The Appellate
Court upheld the trial court's dismissal of the defendant's motion, con-
cluding that he had failed to raise a colorable claim that he was incompe-
tent at the time of sentencing. On the granting of certification, the
defendant appealed to this court, claiming that the Appellate Court
incorrectly concluded that the trial court lacked subject matter jurisdic-
tion to correct his sentence on the ground that he had failed to allege
a colorable claim within the scope of the rule of practice (§ 43-22)
authorizing a judicial authority to correct an illegal sentence or a sen-
tence imposed in an illegal manner. *Held* that the Appellate Court improp-
erly upheld the trial court's dismissal of the defendant's motion to cor-
rect, as the factual allegations and evidence the defendant presented in
connection with his motion made clear that he raised a colorable chal-
lenge to the character of the procedure that led to the imposition of his
sentence, rather than the underlying conviction, and, thus, his claim
nominally fell within the scope of § 43-22: although the prosecutor and
defense counsel during the sentencing proceeding had discussed the
defendant's psychiatric background and diagnosis of schizophrenia, the
factual allegations and evidence the defendant offered in support of
his claim demonstrated a possibility that a factual basis necessary to
establish jurisdiction existed, as the police report and psychiatric evalua-
tion showed that he previously had suffered from hallucinations, had
attempted to commit suicide, and had not received treatment for his
mental health for many years, and the department records showed that
he had refused to take his prescribed medication and had suffered from
auditory hallucinations approximately nine months before sentencing;
moreover, contrary to the state's assertion that the trial court decided
the merits of the defendant's claim and determined that the sentencing
procedure complied with all constitutional and statutory requirements,
that court's decision was limited to the issue of jurisdiction, as the court
never explicitly ruled on the merits of the defendant's claim or made
findings as to whether the proffered evidence overcame the presumption
of competency.

Argued March 25—officially released October 21, 2021*

*Procedural History*

Substitute information charging the defendant with
the crimes of manslaughter in the first degree and
assault in the first degree, brought to the Superior Court
in the judicial district of Hartford, where the defendant
was presented to the court, *Alexander, J.*, on a plea of
guilty; judgment of guilty; thereafter, the court, *Dewey,
J.*, dismissed the defendant's motion to correct an illegal

sentence, and the defendant appealed to the Appellate Court, *Alvord, Sheldon* and *Moll, Js.,* which affirmed the trial court's decision, and the defendant, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Temmy Ann Miller*, for the appellant (defendant).

*Sarah Hanna*, senior assistant state's attorney, with whom, on the brief, was *Sharmese L. Walcott*, state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. The defendant, Jeffrey K. Ward, appeals from the judgment of the Appellate Court affirming the trial court's dismissal of his motion to correct a sentence imposed in an illegal manner. Specifically, he claims that the Appellate Court incorrectly concluded that the trial court lacked subject matter jurisdiction to correct his sentence because he failed to allege a colorable claim within the scope of Practice Book § 43-22.[1] We agree and, accordingly, reverse the judgment of the Appellate Court.

The following facts and procedural history are relevant to our resolution of this certified appeal. Pursuant to a plea agreement, the defendant pleaded guilty to manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and assault in the first degree in violation of General Statutes § 53a-59 (a) (1). After canvassing the defendant, the trial court, *Alexander*, *J.*, accepted the defendant's guilty plea. Following a hearing, and consistent with the plea agreement, the trial court sentenced the defendant to a total effective term of twenty-five years of incarceration. The defendant did not appeal from his conviction.

Approximately four years after sentencing, the defendant filed a motion to correct, accompanied by a memorandum of law and attached documents. The defendant claimed that the sentencing court had imposed his sentence in an illegal manner on the grounds that (1) he was incompetent at the time of sentencing and (2) the sentencing court had, before imposing sentence, failed to order, sua sponte, a competency evaluation and hearing pursuant to General Statutes § 54-56d.

According to the defendant's memorandum of law, at his sentencing hearing, both the prosecutor and defense counsel discussed his psychiatric background, including his diagnosis of paranoid schizophrenia. Although he conceded that, at the sentencing hearing, his attorney told the court that his symptoms had improved to the point that he was then "calm, rational, and understood and appreciated the seriousness of [the] situation," the defendant argued that, since the date of sentencing, substantial additional evidence had become available regarding his mental illness and psychiatric treatment prior to sentencing. This new information, he argued, demonstrated that he was not competent at his sentencing despite his counsel's reassurances to the contrary.

The defendant attached to his motion and supporting memorandum of law an extensive set of records and materials, including the transcript from the sentencing hearing, the police report regarding the underlying incident at issue, a psychiatric report, and clinical records from the Department of Correction (department). The record contains no evidence that the police report, psychiatric report, or clinical records had been provided

to the sentencing judge, and, thus, the Appellate Court concluded that the sentencing judge "could not have relied on those documents to consider ordering" an evaluation and a hearing. *State* v. *Ward*, 193 Conn. App. 794, 812 n.10, 220 A.3d 68 (2019). Specifically, in his motion to correct, the defendant relied on the police report regarding the underlying crime, which indicated that, during an interview with the police, the defendant inserted a pencil approximately five to six inches into his right nostril and then attempted to stab himself in the neck with the pencil, causing a minor laceration. Additionally, he relied on a psychiatric report dated approximately three and one-half months before sentencing, which stated that, even with continued treatment, the defendant had a significant risk of continuing to suffer symptoms of his schizophrenia.

Clinical records of the department dated before the defendant entered his guilty plea reported that he had missed several doses of his prescribed antipsychotic medication. These records also showed that, before sentencing, the defendant told department staff three different versions of the details of his plea deal: (1) he agreed to plead guilty to manslaughter in the first degree and assault in the first degree in exchange for a total effective sentence of twenty-five years of incarceration; (2) he agreed to plead guilty to murder in exchange for a twenty year sentence; and (3) he agreed to plead guilty to manslaughter in exchange for a twenty year sentence. The clinical records further showed that, after his guilty plea but before his sentencing, the defendant missed doses of his prescribed antipsychotic medication intermittently and at times reported experiencing auditory hallucinations. According to the clinical records, approximately one month after his sentencing, the defendant told department staff that he was confused about his sentence, stating that he was serving a thirty year sentence for manslaughter.

After oral argument on the defendant's motion to correct, the trial court reserved decision regarding its jurisdiction and heard the parties on the merits of the motion to correct. The court later issued a memorandum of decision dismissing the motion to correct for lack of subject matter jurisdiction on the ground that the motion challenged the defendant's competency at the time he pleaded guilty pursuant to the plea agreement and, thus, constituted a collateral attack on his conviction, not his sentence.

The defendant appealed to the Appellate Court, claiming that the trial court incorrectly had concluded that it lacked subject matter jurisdiction over his motion to correct.[2] The Appellate Court acknowledged that the trial court's analysis was flawed because it was clear from the pleadings that the defendant was challenging the sentencing proceedings and the legality of the manner in which his sentence was imposed. Id., 806. Never-

theless, after examining the pleadings and documents attached to the defendant's motion to correct, the Appellate Court concluded that the trial court properly dismissed the motion for lack of jurisdiction because the defendant failed to raise "a colorable claim" that he was incompetent at the time of his sentencing, or that the sentencing judge had information prior to sentencing that required her to order a competency evaluation and hearing. Id., 812–13 and n.10. The Appellate Court reasoned that nothing in the attached transcripts, police report, psychiatric report, or psychiatric records supported the conclusion that the defendant was incompetent at the time of sentencing. See id., 812–13.

Judge Sheldon issued a concurring and dissenting opinion. In his view, the defendant had pleaded sufficient facts to raise a colorable claim that he was incompetent at the time of his sentencing but not to raise a colorable claim that Judge Alexander should have sua sponte ordered a competency evaluation and hearing before sentencing. Id., 820 (*Sheldon, J.*, concurring in part and dissenting in part). Judge Sheldon contended that the majority improperly required the defendant to show that he was incompetent at the time of sentencing, thereby requiring him to prove that he would succeed on the merits. Id., 821–22 (*Sheldon, J.*, concurring in part and dissenting in part). In Judge Sheldon's view, the colorability standard required the defendant "to present sufficient facts to establish that his claim of incompetence is a possibility, rather than a certainty . . . and is superficially well founded but may ultimately be deemed invalid." (Citation omitted; internal quotation marks omitted.) Id., 822 n.3 (*Sheldon, J.*, concurring in part and dissenting in part). Applying this standard, Judge Sheldon concluded that the "well documented facts presented to the trial court in the motion to correct concerning the defendant's failure to take his prescribed antipsychotic medication in the weeks before he was sentenced, his contemporaneous experiencing of auditory hallucinations and his confusion, before and after he was sentenced, about the terms of his plea bargain and the length of his sentence, both as agreed to and as imposed, raise at least a genuine possibility that when he was sentenced he was incompetent because he lacked a rational and factual understanding of the proceedings against him due to his ongoing mental illness." Id., 821 (*Sheldon, J.*, concurring in part and dissenting in part). Thus, Judge Sheldon argued that the case should be remanded to the trial court for a hearing on the merits of the defendant's motion. See id., 823 (*Sheldon, J.*, concurring in part and dissenting in part).

The defendant then petitioned for certification to appeal to this court on whether he had raised colorable claims that his sentence was imposed in an illegal manner because (1) the sentencing judge was obligated to order a competency examination but failed to do so,

and (2) he was incompetent at the time he was sentenced. We granted certification, limited to the issue of whether "the Appellate Court correctly determine[d] that the trial court did not have jurisdiction over the defendant's motion to correct an illegal sentence on the ground that the motion, on its face, did not raise a colorable claim that the defendant was incompetent at the time of his sentencing . . . ."[3] *State* v. *Ward*, 334 Conn. 911, 221 A.3d 448 (2020).

Whether the trial court had subject matter jurisdiction over the defendant's motion to correct an illegal sentence is a question of law, and our review is plenary. See, e.g., *State* v. *McCleese*, 333 Conn. 378, 386, 215 A.3d 1154 (2019). We consistently have held "that under the common law a trial court has the discretionary power to modify or vacate a criminal judgment before the sentence has been executed. . . . [But] the court loses jurisdiction over the case when the defendant is committed to the custody of the [C]ommissioner of [C]orrection and begins serving the sentence." (Internal quotation marks omitted.) *State* v. *Evans*, 329 Conn. 770, 778, 189 A.3d 1184 (2018), cert. denied,      U.S.     , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019). After this occurs, the trial court has jurisdiction to modify or vacate the criminal judgment if the legislature or the state constitution grants continuing jurisdiction. See id. Additionally, the trial court retains jurisdiction to modify or vacate a judgment to the extent provided at common law. See id. As one example, at common law, the trial court maintained jurisdiction to correct illegal sentences after the defendant has been committed to the custody of the Commissioner of Correction. See id., 778–79. Practice Book § 43-22 codifies this common-law exception. See id., 779. That section provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner." Practice Book § 43-22.

Because the scope of Practice Book § 43-22 is limited to the court's common-law jurisdiction to consider a defendant's claim, the claim must challenge the legality of a sentence and may not challenge "what transpired during the trial or on the underlying conviction." (Internal quotation marks omitted.) *State* v. *Evans*, supra, 329 Conn. 779. "[F]or the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing proceeding, and not the trial leading to the conviction, must be the subject of the attack." (Emphasis omitted; internal quotation marks omitted.) Id.

In *State* v. *Parker*, 295 Conn. 825, 992 A.2d 1103 (2010), this court made clear that, because our rules of practice cannot expand the trial court's jurisdiction, and because Practice Book § 43-22 codifies common law, a trial court's authority to entertain a motion to

correct either "an illegal sentence" or "a sentence imposed in an illegal manner" derives from the court's common-law authority to "substitute a valid sentence" for an "invalid sentence . . . ." Id., 835. In *Parker*, we "directly address[ed]" for the first time whether, in fact, the trial court had jurisdiction under our common law to entertain a defendant's motion to correct on the ground that "his sentence was imposed in an illegal manner." Id., 833. Our review of that issue, in light of a split among the lower courts, led us to clarify that the common law authorized the court to correct both illegal sentences and sentences imposed in an illegal manner. Id., 837. "Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . . This . . . category reflects the fundamental proposition that [t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." (Citation omitted; internal quotation marks omitted.) Id., 839.[4]

Because of the limited nature of the court's jurisdiction, we more recently have explained that the trial court has jurisdiction over a motion to correct only if the defendant raises "a *colorable claim* within the scope of Practice Book § 43-22 that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence." (Emphasis added; internal quotation marks omitted.) *State* v. *Evans*, supra, 329 Conn. 783. In deciding whether the trial court in the present case had jurisdiction to entertain the defendant's motion, it is useful to survey our case law regarding what constitutes a "colorable claim" as it concerns a challenge to the validity or legality of a sentence. The parties take different views.

The defendant argues that "the colorable claim" requirement can be interpreted in three ways, which he claims this court has applied inconsistently: (1) the claim plausibly challenges the sentence or sentencing proceedings but not the conviction; see id., 784; (2) the claim plausibly will be decided on the merits in the movant's favor; see *State* v. *McCleese*, supra, 333 Conn. 378; or (3) assuming the merits are reached and decided in the movant's favor, it is plausible that a sentence correction will be required. See *State* v. *Delgado*, 323 Conn. 801, 810, 151 A.3d 345 (2016). The defendant contends that only the first interpretation is correct, requiring the court to consider only the legal claim alleged and not the factual allegations or evidence attached in support of the motion to correct. The state

disagrees, arguing that, to determine whether a claim is colorable, a court must examine whether the defendant has alleged sufficient facts to create a possibility that a factual basis exists to establish the merits of the defendant's claim, not whether the defendant has merely raised a claim that possibly challenges the sentence.[5]

A review of this court's jurisprudence on this issue belies the defendant's contention that this court inconsistently has interpreted and applied this "colorable claim" requirement. Rather, our case law holds that to raise a colorable claim within the scope of Practice Book § 43-22, the legal claim and factual allegations must demonstrate a possibility that the defendant's claim challenges his or her sentence or sentencing proceedings, not the underlying conviction. The ultimate legal correctness of the claim is not relevant to our jurisdictional analysis. This is consistent with the well established rule that "[t]he jurisdictional and merits inquiries are separate . . . ." *State* v. *Evans*, supra, 329 Conn. 784.

It was our Appellate Court, in an en banc ruling, that first employed the phrase "colorable claim" to measure the boundaries of a trial court's jurisdiction to decide a motion to correct. In *State* v. *Taylor*, 91 Conn. App. 788, 882 A.2d 682, cert. denied, 276 Conn. 928, 889 A.2d 819 (2005), the court explained that "[t]he relief of sentence correction is warranted when, for example, (1) the defendant's claim either raises issues relating to the legality of the sentence itself or to the legality of the sentencing procedure and (2) the allegations of the claim are in fact substantiated on a review of the merits of the claim." Id., 793. The court in *Taylor* held that the "first requisite, namely, raising a *colorable claim* within the scope of Practice Book § 43-22, for the relief afforded by that section," had not been met, and, therefore, "jurisdiction [was] lacking." (Emphasis added.) Id. The court emphasized that "[w]hether jurisdiction to review the merits of a claim exists is not defined by the odds of victory on the merits of a case." Id. After examining the legal claim raised and the allegations asserted in support of it, the court in *Taylor* held that the trial court lacked jurisdiction because the defendant had not raised any claim challenging his sentence but, instead, had sought a new or amended presentence investigation report for use in his postjudgment application to the sentence review division of the Superior Court. See id., 793–94. As a result, the Appellate Court did not proceed to the second requisite, which involves the merits of the claim raised. Thus, in determining jurisdiction, the court did not mention the plausibility of the claim's merits.

Although the Appellate Court in *Taylor* injected the phrase "colorable claim" into its jurisprudence in considering motions to correct, the phrase is common to

other measures of a trial court's jurisdiction, albeit the analysis of whether a "colorable claim" exists is necessarily unique to each context.[6] Importantly, in the context of motions to correct an illegal sentence, the Appellate Court's analysis of a "colorable claim" in *Taylor* was in line with the standard this court previously had applied to this point in *Parker* and is consistent with our more recent holding in *Evans*, both of which did not consider the merits in determining the existence of a colorable claim. Specifically, in *Parker*, in determining whether the trial court retained jurisdiction over the defendant's motion to correct, we began with the premise that, "if a court imposes an invalid sentence, it retains jurisdiction to substitute a valid sentence." *State* v. *Parker*, supra, 295 Conn. 835. Although we did not clearly articulate a detailed standard to apply in determining jurisdiction, we considered both the motion's legal claim and its factual allegations. See id., 837, 840–41. We first looked to whether the defendant had raised a legal claim that fell within the scope of the common-law rule. In his motion to correct, the defendant in *Parker* claimed that his sentence had been imposed in an illegal manner because "he had been deprived of an opportunity to review his presentence report and to address inaccuracies therein; and [his attorney] had failed to review the presentence report with him or to bring any inaccuracies in the report to the court's attention." Id., 840. We recognized that "due process precludes a sentencing court from relying on materially untrue or unreliable information in imposing a sentence." Id., 843. Thus, at face value, the defendant's legal claim—that the presentence report included inaccurate information—appeared to fit within the scope of Practice Book § 43-22. See id., 837.

Our analysis did not end there, however. We then considered the defendant's factual allegations to ensure that he was in fact challenging the legality of his sentence. See id., 847–52. The defendant in *Parker* did not advance any factual allegations that any specific information contained in the presentence report was false or that the trial court relied on any false information in determining his sentence. Id., 850. The factual allegations showed that the defendant was not challenging the trial court's reliance on false information in determining the sentence but, instead, focused on his counsel's failure to review the presentence report with him. See id., 847–48. We explained that these factual allegations, challenging his counsel's conduct at sentencing, were akin to a claim of ineffective assistance of counsel, which falls outside the scope of Practice Book § 43-22. See id., 850–52. This holding was not premised on the merits of the defendant's claim but on whether it raised a challenge to the sentencing proceeding itself. Even though we did not use the phrase "colorable claim," the standard we applied in *Parker* is essentially the same as the standard the Appellate Court had

applied previously in *Taylor*: Based on the legal claim itself and on the allegations supporting it, did the defendant challenge his or her sentence or the sentencing procedure, and not the underlying conviction?

It was therefore no accident that this court in *Delgado* used the phrase "colorable claim," citing to *Taylor*. *State* v. *Delgado*, supra, 323 Conn. 810. *Delgado* involved a motion to correct a sentence imposed in an illegal manner, and, for the first time, we articulated the jurisdictional standard as requiring "the defendant [to raise] a colorable claim within the scope of Practice Book § 43-22 that would, if the merits of the claim were reached and decided in the defendant's favor, require correction of a sentence." (Internal quotation marks omitted.) Id.

Not until *Evans* did we provide greater guidance on what constitutes a colorable claim within the scope of Practice Book § 43-22: "A colorable claim is one that is superficially well founded but that may ultimately be deemed invalid . . . . For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he might prevail. . . . The jurisdictional and merits inquiries are separate; whether the defendant ultimately succeeds on the merits of his claim does not affect the trial court's jurisdiction to hear it. . . . It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . We emphasize, however, that this general principle that there is a strong presumption in favor of jurisdiction . . . in criminal cases . . . is considered in light of the common-law rule that, once a defendant's sentence has begun [the] court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . Thus, the presumption in favor of jurisdiction does not itself broaden the nature of the postsentencing claims over which the court may exercise jurisdiction in criminal cases . . . ." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *State* v. *Evans*, supra, 329 Conn. 784. We then clarified that our jurisdictional analysis focuses on "whether it is plausible that the defendant's motion challenged the sentence, rather than the underlying trial or conviction . . . ." Id., 784–85. In doing so, "we consider the nature of the specific legal claim raised therein." Id., 785. Thus, it is not the possibility of success on the merits of the claim raised that creates jurisdiction but the possibility that the claim challenges the sentence and not the underlying conviction.

Our application of these legal principles in *Evans* supports our interpretation of this case law. In *Evans*, the defendant claimed in his motion to correct that his sentence was imposed in an illegal manner because it exceeded the relevant statutory limits under General

Statutes (Rev. to 2011) §§ 21a-278 (b) and 21a-277 (a),[7] and "the fact triggering the mandatory minimum [sentence] was not found by a proper [fact finder] or admitted by the defendant . . . ." (Internal quotation marks omitted.) Id., 775. Looking at the specific legal claim raised, including the allegations offered in support, this court determined that the defendant was not challenging his conviction under § 21a-278 (b) but, rather, was "seek[ing] resentencing, claiming that § 21a-278 (b) merely enhances the penalty available under § 21a-277 (a) . . . ." Id., 785. Although we noted that, given the lack of case law regarding these statutes, "the defendant's interpretation of the narcotics statutory scheme [was] sufficiently plausible to render it colorable for the purpose of jurisdiction over his motion," we concluded that "the fact that the defendant does not ask us to disturb his conviction under § 21a-278 (b), but merely seeks remand for resentencing, renders [the] case distinguishable from [cases challenging the conviction] . . . ." (Citation omitted.) Id., 786. "Because this claim [was] colorably directed to the validity of the sentence rather than the underlying conviction, we conclude[d] that the trial court properly exercised jurisdiction over the defendant's motion to correct." Id., 787–88. Thus, in *Evans*, our determination of colorability was based on the possibility that the defendant's claim fell within the scope of Practice Book § 43-22—in other words, whether the claim possibly challenged the defendant's sentence or sentencing procedure. Contrary to the defendant's contention, in so concluding,[8] we examined the factual allegations to verify that the defendant in fact was challenging his sentence and not his conviction, consistent with our analysis in both *Parker* and *Taylor*. Although this court only recently began using the phrase "colorable claim," our use of that phrase in no way alters the applicable standard for determining jurisdiction on a motion to correct.

The state does not dispute our interpretation of *Evans*. Both parties, however, argue that *Evans* is inconsistent with *Delgado*, as well as with our more recent analysis in *McCleese*. According to the defendant, our holding in *Delgado* conflicts with *Evans* because, although we did not analyze the effect of our adoption of the phrase "colorable claim" in *Delgado*, our analysis made clear that, to be colorable, the defendant had to show it was possible that his sentence would be corrected. In contrast, according to the state, *Delgado* conflicts with *Evans* because, in applying the "colorable claim" standard, this court considered not only whether the claim was challenging the legality of the sentence, and not the validity of the conviction, but also whether there was a possibility that the defendant could succeed on the merits of the claim. *Delgado* and *Evans*, however, can be harmonized.

In *Delgado*, the defendant filed a motion to correct, claiming that his sentence of sixty-five years of impris-

onment without parole was illegal under the United States Supreme Court's juvenile sentencing cases; see *State* v. *Delgado*, supra, 323 Conn. 802–805; including *Miller* v. *Alabama*, 567 U.S. 460, 465, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), which requires "(1) that a lesser sentence than life without parole must be available for a juvenile offender; and (2) that the sentencer must consider age related evidence as mitigation when deciding whether to irrevocably sentence juvenile offenders to a [term of life imprisonment, or its equivalent, without parole]." (Internal quotation marks omitted.) *State* v. *Delgado*, supra, 806. In *Delgado*, the trial court dismissed the motion for lack of jurisdiction on the ground that "the defendant was not sentenced pursuant to a mandatory sentencing scheme . . . ." Id., 809 n.6. After the trial court's judgment, the legislature enacted Public Acts 2015, No. 15-84 (P.A. 15-84), codified as amended at General Statutes § 54-125a, which provided the defendant with the possibility of parole. Id., 807.

In *Delgado*, we explained that, at the time the trial court ruled on the defendant's motion to correct, the trial court "incorrectly concluded that it lacked jurisdiction over the defendant's motion to correct at that time. The motion, at that point, raised a viable claim by alleging that a sentence of life imprisonment without parole had been imposed without consideration of youth related mitigating factors." Id., 809 n.6. Nevertheless, we ultimately upheld the trial court's dismissal of the motion to correct on the alternative ground that, because of the change in the law, the defendant's sentence no longer was illegal under *Miller*, and, thus, the claim fell outside the scope of Practice Book § 43-22. Id., 816.

Specifically, we explained: "Because [federal law does] not require a trial court to consider any particular mitigating factors associated with a juvenile's young age before imposing a sentence that includes an opportunity for parole, the defendant can no longer allege, after the passage of P.A. 15-84, that his sentence was imposed in an illegal manner on the ground that the trial court failed to take these factors into account. Such an allegation is an essential predicate to the trial court's jurisdiction to correct the sentence. An allegation that the court failed to consider youth related factors before imposing a sentence of life with parole is not sufficient to establish a jurisdictional basis for correcting a sentence. . . . We therefore conclude that the defendant has not raised a colorable claim of invalidity that, if decided in his favor, would require resentencing." (Citations omitted; emphasis omitted.) Id., 812–13. "In view of the . . . established rule that a sentencing court's jurisdiction to correct a sentence is limited to sentences that are invalid . . . we conclude that the trial court no longer possesses jurisdiction over the defendant's motion to correct." (Citations omitted.) Id., 813.

Subsequently, in *Evans*, we addressed our holding in *Delgado*: "[O]ur recent decision in [*Delgado*] appeared to analyze a motion to correct an illegal sentence in jurisdictional terms when subsequent legal developments affected its merits. . . . We emphasize that *Delgado* does not stand for the proposition that the merits of a motion to correct . . . are inextricably intertwined with the court's jurisdiction over the motion. Rather, we understand *Delgado* to be, in essence, a mootness decision, insofar as the subsequent statutory changes afforded the defendant all of the relief to which he was entitled from his pending motion to correct." (Citations omitted.) *State* v. *Evans*, supra, 329 Conn. 787–88 n.16. Thus, in *Evans*, we explained that the statutory amendment at issue negated the defendant's challenge to the sentence, and, thus, the defendant was no longer challenging an illegal sentence. See *State* v. *McCleese*, supra, 333 Conn. 414. We explained that, if a change in the law renders an illegal sentence legal, then the jurisdictional prerequisite for correcting an illegal sentence—that the claim challenges the sentence, not the conviction—is missing, and, thus, the claim falls outside the scope of Practice Book § 43-22. See *State* v. *Boyd*, 323 Conn. 816, 820–21, 151 A.3d 355 (2016) (relying on *Delgado* to hold that court lacked jurisdiction because "the defendant [could] no longer allege, after the enactment of P.A. 15-84, that his sentence was imposed in an illegal manner on the ground that the trial court failed to take [the *Miller*] factors into account"). As a result, the defendant's claim in *Delgado* did not fall within the scope of § 43-22, rendering the *outcome* akin to mootness. We did not consider the possibility of success on the merits of the defendant's claim. Rather, we considered the specific legal claim and allegations and held that there no longer was a possibility that the defendant could challenge the legality or validity of his sentence. See *State* v. *Delgado*, supra, 323 Conn. 812.

Neither does our subsequent holding in *McCleese* conflict with *Evans* or *Delgado*. In *McCleese*, the defendant sought to overturn our holding in *Delgado* by raising various constitutional challenges to P.A. 15-84 that, if successful, would have required this court to hold that P.A. 15-84 did not replace the defendant's illegal sentence with a legal sentence. See *State* v. *McCleese*, supra, 333 Conn. 387, 409. This would have created a possibility that the defendant could challenge the legality of his sentence. See id., 386–87. Because of the unique nature of the defendant's claim, we had to consider the merits of the defendant's constitutional challenges to P.A. 15-84 to determine whether a colorable claim falling under the scope of Practice Book § 43-22 existed. Because the claim raised in the present case is distinguishable from the unique claims raised in *McCleese*, we do not consider our analysis in *McCleese* to depart from the standard applied in *Evans*.

Our most recent case on this issue supports our conclusion that *Delgado* and *McCleese* do not alter or conflict with the test for colorability established in *Parker* and *Evans*. In *State* v. *Smith*, 338 Conn. 54, 256 A.3d 615 (2021), the defendant's motion to correct involved a claim regarding cumulative convictions that violate the double jeopardy clause, thereby arguably affecting the defendant's sentence. See id., 58. We held that, "under *Evans*, when cumulative convictions affect a sentence in any manner, the trial court has jurisdiction to entertain a motion to correct an illegal sentence."[9] (Emphasis omitted.) Id., 63. Relevant to the issue of colorability, we explained, in reaching this conclusion, that this court may rely on the presumption in favor of jurisdiction when "the defendant has made a colorable—*however doubtful*—claim of illegality affecting the sentence, rather than the underlying conviction." (Emphasis altered; internal quotation marks omitted.) Id., 62–63. The emphasized language demonstrates that jurisdiction is not based on the possibility of success on the merits of the defendant's claim; rather, what must be colorable is that the claim challenges the legality of the sentence, not the conviction. In *Smith*, however, the defendant sought only to modify his conviction, not his sentence. See id., 58. Specifically, he claimed that his sentence was illegal because the court merged his convictions of felony murder and manslaughter instead of vacating his conviction on the manslaughter charge. Id. Thus, we held that the trial court lacked jurisdiction. Id., 64.

Decisions of our Appellate Court consistently have applied this analysis. See *State* v. *Boyd*, 204 Conn. App. 446, 455, 253 A.3d 988 (considering both legal claim and factual allegations in determining that jurisdiction was lacking and holding that, although "the motion to correct an illegal sentence nominally challenges the sentencing proceedings," factual allegations showed that defendant was challenging his conviction), cert. denied, 336 Conn 951, 251 A.3d 617 (2021); *State* v. *Battle*, 192 Conn. App. 128, 134–35, 217 A.3d 637 (2019) (considering legal claim and factual allegations in concluding that defendant brought colorable claim challenging his sentence but not addressing possibility of success on merits), aff'd, 338 Conn. 523,      A.3d (2021); *State* v. *Mukhtaar*, 189 Conn. App. 144, 149–51, 207 A.3d 29 (2019) (looking at factual allegations in holding that trial court lacked jurisdiction because defendant was challenging his conviction, not his sentence); *State* v. *Walker*, 187 Conn. App. 776, 788, 204 A.3d 38 (2019) ("[i]n determining whether it is plausible that the defendant's motion challenged the sentence, rather than the underlying trial or conviction, we consider the nature of the specific legal claim raised therein" (internal quotation marks omitted)), cert. denied, 331 Conn. 914, 204 A.3d 703 (2019); *State* v. *Antwon W.*, 179 Conn. App. 668, 675–76, 181 A.3d 144

(concluding, after looking at both legal claim and allegations, that "[t]he defendant's motion did not merely raise a collateral attack on the judgment of conviction but, on its face, attacked the manner in which his sentence was imposed"), cert. denied, 328 Conn. 924, 180 A.3d 965 (2018). Notwithstanding all of this recent authority, a majority of the Appellate Court panel in the present case relied on the older decision of *State* v. *Jason B.*, 176 Conn. App. 236, 244–45, 170 A.3d 139 (2017), in holding that, for a trial court to have jurisdiction, a defendant must establish the possibility that he could succeed on the merits of his claim. See *State* v. *Ward*, supra, 193 Conn. App. 807.

In *Jason B.*, the Appellate Court summarized our holding in *Delgado* as requiring that, "for the trial court to have jurisdiction over a defendant's motion to correct a sentence that was imposed in an illegal manner, the defendant must put forth a *colorable claim that his sentence, in fact, was imposed in an illegal manner. A colorable claim is '[a] claim that is legitimate and that may reasonably be asserted, given the facts presented and the current law (or a reasonable and logical extension or modification of the current law).' Black's Law Dictionary (10th Ed. 2014) p. 302. For jurisdictional purposes, to establish a colorable claim, a party must demonstrate that there is a possibility, rather than a certainty, that a factual basis necessary to establish jurisdiction exists . . . such as, in the present context, that the sentencing court relied on inaccurate information or considerations that were outside of the record.*" (Citation omitted; emphasis added.) *State* v. *Jason B.*, supra, 176 Conn. App. 244–45. In other words, the court in *Jason B.* required that the defendant establish the possibility that he could succeed on the merits of his claim, rather than the possibility that he was challenging his sentence or sentencing procedure.

Although the court in *Jason B.* was correct as to the definition of a colorable claim, as explained, our holding in *Delgado* does not require the defendant to show that he raised a claim that possibly could succeed on the merits. Rather, he must raise a claim that possibly falls within the scope of Practice Book § 43-22—that is, that it challenges the sentence or sentencing procedure, not the conviction. In determining if the defendant raised such a claim, we consider both the legal claim raised and the factual allegations, but, as Judge Sheldon indicated, the defendant is required to show only "that there is a possibility, rather than a certainty" that the defendant challenges the sentence or sentencing procedure. (Internal quotation marks omitted.) *State* v. *Ward*, supra, 193 Conn. App. 817 (*Sheldon, J.*, concurring in part and dissenting in part).

In the present case, the defendant claimed in his motion to correct that the trial court imposed his sentence in an illegal manner because he was incompetent

at the time of sentencing. It is well established that the defendant had both a statutory and constitutional right to be tried and sentenced while he was competent. See, e.g., *State* v. *Ross*, 269 Conn. 213, 270, 849 A.2d 648 (2004); *State* v. *DeAngelis*, 200 Conn. 224, 242, 511 A.2d 310 (1986); see also General Statutes § 54-56d (a). A claim that he was incompetent at the time of sentencing clearly challenges "the character of the procedure which [led] to the imposition of [the] sentence," not his underlying criminal conviction. (Internal quotation marks omitted.) *State* v. *Parker*, supra, 295 Conn. 839. Thus, at least nominally, the defendant raised a claim that falls within the scope of Practice Book § 43-22. See *State* v. *Mukhtaar*, supra, 189 Conn. App. 150 n.6 ("[w]e note that a claim regarding a defendant's competency at the sentencing proceeding . . . would fall within the jurisdiction of the trial court for the purpose of a motion to correct an illegal sentence filed pursuant to Practice Book § 43-22" (citations omitted)).

Additionally, the factual allegations and evidence the defendant attached in support of his motion make clear that his motion raised a colorable claim challenging his sentencing. At the time of sentencing, both the prosecutor and defense counsel referred to his psychiatric background, including his diagnosis of schizophrenia. The defendant alleged that the police report, psychiatric evaluation, and his records from the department, although not part of the record at sentencing,[10] established his lack of competence. The police report and psychiatric evaluation show that the defendant previously had suffered from hallucinations and had attempted suicide on multiple occasions. The report also stated that the defendant had not received treatment for his mental health for many years, contributing "to an increased likelihood of worse symptoms, more chronic symptoms and/or more frequent exacerbation of symptoms." The records from the department show that the defendant refused to take his medication and suffered from auditory hallucinations approximately nine months before sentencing. Once he started taking his medication again, he continued to report having paranoid thought processes and ideas. The defendant again missed several doses of his medication in the two months leading up to his sentencing. Less than two weeks before his sentencing, the defendant alleged and the records show that he did not take his medication and was hearing voices. The records also show that the defendant misstated his sentence multiple times in various ways both before and after his sentencing.

Relying on these facts, the defendant argued in his motion to correct: "[T]he defendant's mental health history, his repeated failure to maintain his medication regimen, his continued auditory hallucinations and paranoia, and his mistaken belief regarding his actual sentence throughout the plea and sentencing processes [demonstrated] that he did not understand his plea or

sentencing proceedings and was incompetent at both. The issue here, however, is his sentencing, and, given his incompetence at the time, it was imposed in an illegal manner.''

Although the defendant alleged that he was incompetent at the plea proceedings and relied on records regarding his mental health from before the plea proceedings, the allegations and evidence make clear that the defendant was raising a challenge to the sentencing procedure, not his conviction. The defendant merely relied on his lengthy and ongoing mental health problems to support his claim that he was incompetent at the time of sentencing. He has provided evidence that he suffered from mental health problems in the weeks leading up to and following his sentencing. Whether such evidence is sufficient to establish the merits of the defendant's claim that he was incompetent at the time of sentencing is a different question and not relevant to our analysis. The factual allegations and evidence offered in support of the defendant's claim suffice to show a possibility that a factual basis necessary to establish jurisdiction exists—that he challenges the legality of his sentence, not his conviction.[11] Accordingly, we conclude that the Appellate Court improperly affirmed the trial court's dismissal of the defendant's motion to correct.

Nevertheless, the state argues in the alternative that, even if the trial court had jurisdiction, we should affirm the Appellate Court's judgment because the trial court correctly determined the merits of the defendant's claim. Specifically, the state argues that the trial court decided the merits because it stated in its memorandum of decision that the ''sentencing procedure . . . complied with all constitutional and statutory requirements,'' and that the defendant was presumed competent.

Contrary to the state's contention, the trial court never explicitly ruled on the merits of the defendant's claim and made no findings as to whether the proffered evidence overcame the presumption of competency. The trial court's memorandum of decision was limited to the issue of jurisdiction. Thus, we agree with Judge Sheldon that the defendant is entitled to a hearing on the merits of his motion, and the case must be remanded for such a hearing. See *State* v. *Bozelko*, 154 Conn. App. 750, 765–66, 108 A.3d 262 (2015).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to conduct a hearing on the merits of the defendant's motion to correct.

In this opinion the other justices concurred.

* October 21, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Practice Book § 43-22 provides: ''The judicial authority may at any time

correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[2] The defendant also claimed that the trial court improperly adjudicated the motion to correct, rather than referring the motion to the sentencing court. The Appellate Court determined that this claim was unpreserved and failed under the third prong of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). See *State* v. *Ward*, supra, 193 Conn. App. 797–800. The defendant did not request certification to appeal with respect to this issue.

[3] We did not grant certification on the issue of whether the sentencing judge was obligated to sua sponte order a competency examination. Accordingly, on remand, the defendant is entitled to an evidentiary hearing only on the merits of his claim that he was incompetent at the time he was sentenced.

[4] We noted in *Parker*, however, that the category of sentences imposed in an illegal manner does "not encompass rights or procedures subsequently recognized as mandated by federal due process . . . [or] procedures mandated by state law that are intended to ensure fundamental fairness in sentencing, which, if not followed, could render a sentence invalid." (Citations omitted.) *State* v. *Parker*, supra, 295 Conn. 839–40.

The state argues that we decided *Parker* incorrectly because the common law did not provide the trial court with jurisdiction to correct sentences imposed in an illegal manner after the defendant began serving his or her sentence, and, thus, the defendant's claim falls outside the scope of Practice Book § 43-22. Although the state does not explicitly ask us to overrule *Parker*, that is, in essence, its argument. "Our determination of whether we should overrule a prior decision is guided by the doctrine of stare decisis, which counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.) *State* v. *Bischoff*, 337 Conn. 739, 762,     A.3d     (2021). "While stare decisis is not an inexorable command . . . the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some special justification. . . . Such justifications include the advent of subsequent changes or development in the law that undermine[s] a decision's rationale . . . the need to bring [a decision] into agreement with experience and with facts newly ascertained . . . and a showing that a particular precedent has become a detriment to coherence and consistency in the law . . . ." (Citation omitted; internal quotation marks omitted.) *Sepega* v. *DeLaura*, 326 Conn. 788, 798–99 n.5, 167 A.3d 916 (2017). Although we appreciate the state's comprehensive treatment of this question in its brief, because *Parker* is of relatively recent vintage, and because the state has not identified cogent reasons why permitting our trial courts, postsentencing, to entertain a defendant's claim that his sentence was imposed in an illegal manner will result in an unworkable scheme or one that will unduly prejudice the state, we decline the state's implicit request that we overrule this precedent.

[5] Alternatively, the state argues that, because the current state of the law is " 'muddied,' " we should adopt a "novel" and stricter jurisdictional framework. Because a court has jurisdiction over a motion to correct only when a sentence is actually illegal, the state suggests that the motion itself must demonstrate the illegality of the sentence on the merits to invoke the trial court's jurisdiction. Under the state's proposed standard, the motion would serve as an offer of proof. If the proffer is insufficient to establish illegality, the motion must be dismissed; but if the proffer is sufficient to show illegality, the movant then must support the proffer with evidence. If illegality is established, then the trial court must correct the sentence. Because, as explained, our prior case law can be harmonized, we decline to create such a new framework.

[6] For example, we have held that, under General Statutes § 22a-16, "standing . . . is conferred only to protect the natural resources of the state from pollution or destruction. . . . Accordingly, all that is required to invoke the jurisdiction of the Superior Court under § 22a-16 is a colorable claim, by any person [or entity] against any person [or entity], of conduct resulting in harm to one or more of the natural resources of this state. . . . Although it is true, of course, that the plaintiff need not prove its case at this stage of the proceedings . . . the plaintiff nevertheless must articulate a colorable claim of unreasonable pollution, impairment or destruction of the environment." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 432,

829 A.2d 801 (2003). In *Fort Trumbull Conservancy, LLC*, this court held that the plaintiff failed to raise a colorable claim under § 22a-16 because, although the complaint expressly challenged both the legality of the process pursuant to which the defendants adopted the development plan and the necessity of the demolition component of the plan, there were no allegations that these errors likely caused unreasonable harm to the environment "because it [was] not evident how the defendants' failure to follow certain procedural requirements in adopting the development plan or to consider alternatives to the demolition of buildings in the Fort Trumbull area [was] likely to cause such harm. Nor [was] it apparent what the nature of any such harm might be." Id., 433. In so holding, we did not consider the merits of the claim but only whether the plaintiff claimed that the challenged conduct likely resulted in harm to the environment. Id., 432–33; see *Wrotnowski* v. *Bysiewicz*, 289 Conn. 522, 528, 958 A.2d 709 (2008) (holding that plaintiff lacked standing under General Statutes § 9-323 when he did not challenge "any act or conduct by the [defendant] that . . . interprets some statute, regulation or other authoritative legal requirement, applicable to the election process . . . or . . . any mandatory statute that the defendant has failed to apply or follow," regardless of merits of that claim (citation omitted; internal quotation marks omitted)); see also *Connecticut Assn. of Boards of Education, Inc.* v. *Shedd*, 197 Conn. 554, 557 n.1, 499 A.2d 797 (1985) ("We emphasize that the question of standing is not an inquiry into the merits. A plaintiff may have standing and nevertheless lose his suit. Standing requires no more than a colorable claim of injury; a plaintiff ordinarily establishes his standing by allegations of injury.").

[7] Hereafter, all references to §§ 21a-277 and 21a-278 are to the 2011 revision of the General Statutes.

[8] In *Evans*, we acknowledged that the dissent in *State* v. *McGee*, 175 Conn. App. 566, 586, 168 A.3d 495 (*Bishop, J.*, dissenting), cert. denied, 327 Conn. 970, 173 A.3d 953 (2017), thoughtfully noted that our case law lacks clarity regarding when a motion to correct an illegal sentence challenges a sentence rather than a conviction, especially when the claim involves double jeopardy violations for multiple punishments. *State* v. *Evans*, supra, 329 Conn. 781 n.13. To address this lack of clarity, Judge Bishop "suggested revisions to the case law governing motions to correct, including the imposition of time limitation[s] and limiting vacation of convictions to cases in which 'it is obvious from the criminal information and verdict that convictions violate the protection against double jeopardy,' and 'that such remedial action can only be taken before a defendant has commenced serving his or her sentence.' " Id., quoting *State* v. *McGee*, supra, 595–98 (*Bishop, J.*, dissenting). In *Evans*, however, we decided to "leave the specific issues identified by Judge Bishop [for] another day . . . [but] acknowledge[d] that the demarcation between conviction and sentence may not always be crystal clear, particularly in cases presenting [double jeopardy] issues, and may invoke the presumption in favor of jurisdiction in cases in which the defendant has made a colorable—however doubtful—claim of illegality affecting the sentence, rather than the underlying conviction." (Emphasis omitted.) *State* v. *Evans*, supra, 781 n.13.

Both the defendant and the state in the present case rely on Judge Bishop's dissent in *McGee* to support their respective arguments that we should clarify or overhaul our case law regarding motions to correct. Judge Bishop's dissent, however, involved the blurred lines between sentencing proceedings and trial proceedings, especially in relation to double jeopardy issues. He did not identify any confusion regarding this court's analysis of whether a defendant has raised a colorable claim under Practice Book § 43-22. Thus, we need not address the specific issues Judge Bishop identified.

[9] In *Smith*, we questioned the validity of our holding in *Evans* that a challenge to cumulative convictions constitutes a challenge to the sentence, not the conviction, but we did not question the validity of the colorability test applied in *Evans*. See *State* v. *Smith*, supra, 338 Conn. 62–63.

[10] We note that, before the Appellate Court, the state argued that "the defendant's claim that he was incompetent when he was sentenced, as evidenced by information that was never before the sentencing court, does not fall within the purview of Practice Book § 43-22 because the claim does not relate to any alleged error on the part of the sentencing court. . . . [Specifically], the state argues that without evidence that the sentencing court knew of the information in the department's records at the time of sentencing, the defendant could not have been sentenced in an illegal manner." *State* v. *Ward*, supra, 193 Conn. App. 820 n.2 (*Sheldon, J.*, concurring in part and dissenting in part). The majority did not address this argument,

and Judge Sheldon specifically rejected it. The state has not advanced this argument before this court. Additionally, this argument relates to the merits of the defendant's claim, not to the colorability of that claim. Thus, we do not address it.

[11] The Appellate Court majority concluded that the defendant did not establish a sufficient factual basis necessary to establish that jurisdiction exists because these facts did not raise the possibility that the defendant was incompetent at the time of sentencing. *State* v. *Ward*, supra, 193 Conn. App. 812. More specifically, the majority determined that the defendant did not allege sufficient facts to overcome the presumption of competency under § 54-56d, reasoning that the reports from the department were dated from before and after sentencing and, thus, did not show the defendant's mental state at the time of sentencing. See id., 812–13. Additionally, the majority determined that the defendant's misunderstanding of the details of his plea was not sufficient to overcome the presumption of competency. See id., 813. We need not address whether the alleged facts are sufficient to overcome the presumption of competency, which goes to the merits of the defendant's claim. For the same reason, we need not address the state's argument that the defendant failed to raise a colorable claim because he did not allege or establish that his failure to take medication could be linked to his competence at the time of sentencing. These are merits issues that, presumably, will be decided on remand.

————————————————